UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH HERNANDEZ, | ) |
|                 Plaintiff, | ) No. 19-CV-50221 |
| v. | ) Judge Rebecca R. Pallmeyer |
| WAL-MART STORES, INC., | ) |
|                 Defendant. | ) Magistrate Iain D. Johnson |

**MEMORANDUM ORDER AND OPINION**

From 2004 until 2001, Plaintiff Sarah Hernandez was employed by Defendant Wal-Mart Stores ("Wal-Mart") at three different Illinois locations. She began as an associate, was later promoted to department manager, and then eventually joined the Manager in Training ("MIT") program. After completing the MIT program, Hernandez was assigned to a new store where she alleges that her manager, Robert Maynard, began belittling her and making it clear that he would not support her aspirations for further promotion. She also alleges that he treated her differently than her male co-workers. Specifically, she claims that she was disciplined for conduct for which they were not, and that some of them were promoted despite that conduct. As a result, she did not formally seek any further promotion opportunities. She also alleges a pattern of discriminatory promotion practices by Defendant.

Hernandez was originally part of a class-action suit against Wal-Mart. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). After the Supreme Court reversed the order certifying a nation-wide class in that case, Hernandez brought this individual action, alleging that Defendant Wal-Mart has violated Title VII of the Civil Rights Act of 1964 by discriminating against her on the basis of sex. Defendant moves to dismiss under Rule 12(b)(6) for failure to state a claim on the grounds that Plaintiff has failed to plead facts establishing that she suffered discrimination. Wal-

Mart notes, in particular, that (1) Plaintiff admits that she was promoted several times, and (2) she did not apply for any promotion which she claims to have been denied. For the reasons stated below, Defendant's motion to dismiss [23] is denied.

## **BACKGROUND**

As noted, Plaintiff Hernandez was part of a nationwide class of women who sued Wal-Mart under Title VII for discrimination on the basis of sex with regard to pay and promotion. (Compl. [1] ¶ 1); *see Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 188 (N.D. Cal. 2004). After class certification was reversed (Compl. [1] ¶ 2), Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission. (*Id.* ¶¶ 4-5.) Plaintiff was issued the right to sue by the EEOC on June 12, 2019, and subsequently filed this action. (*Id.* ¶ 6.)

Plaintiff Hernandez began her employment with Wal-Mart in 2004, as an associate in store 3597 in Belvidere, Illinois. (*Id.* ¶¶ 9, 50.) About thirteen months later she was promoted to Department Manager. (*Id.*) In 2006 she joined Wal-Mart's Manager in Training ("MIT") program and, after completing that program, was assigned to store 1955 in Rockford, Illinois. (*Id.* ¶¶ 52, 55.) In 2010, her manager, Robert Maynard ,transferred Hernandez to store 5398 in Rockford, Illinois. (*Id.* ¶¶ 55, 60.)

**I.      Company-wide Discrimination**

During the time she was employed by Defendant, Plaintiff alleges that Defendant engaged in discriminatory practices with regard to internal promotion. She alleges that from 2003 through 2006, Defendant used a posting system for entry into the MIT program that (1) required candidates for promotion to be willing to commute for up to one hour, (2) required candidates to be willing to travel for up to six weeks, and (3) gave preference to candidates who were willing to

relocate. (*Id.* ¶ 22.) Plaintiff believes these factors "would be more likely to discourage women than men" from applying to the MIT program.[1] (*Id.*)

Plaintiff alleges, further, that in 2007, Defendant began using a new system that allowed its managers to engage in a "pre-selection" practice by posting positions, and then closing the posting without selecting any of the applicants if their preferred candidate did not apply. (*Id.* ¶ 23.) According to the complaint, District Managers and Regional Personnel Managers were provided with uniform minimum eligibility requirements for promotion into the MIT program, but beyond those minimum eligibility requirements, there were no job-related criteria for selecting persons from the pool of applicants for promotion. (*Id.* ¶ 25.) These practices, she alleges, allowed the decision-makers to engage in pre-selection of a preferred candidate. (*Id.* ¶ 26.)

Without identifying the source of her information, Plaintiff alleges that a 1998 survey of Wal-Mart managers revealed that many managers were "close-minded" about diversity in the workplace, and that some District Managers "don't seem personally comfortable with women in leadership roles." (*Id.* ¶ 45.) She further alleges that this survey echoes a 1992 report by female Wal-Mart management employees that found, among other things, that "[s]tereotypes limit the opportunities offered to women," and that "[c]areer decisions are made for [employees] based on gender." (*Id.* ¶ 46.) She also alleges that Wal-Mart managers are required to attend training programs at the Walton Institute, and that "[t]hese managers were advised at the Institute that the reason there are few senior female managers at Wal-Mart is because men were 'more aggressive in achieving those levels of responsibility' than women." (*Id.* ¶ 47.) Finally, she alleges that at these training programs, "[m]anagers were cautioned that efforts to promote women could lead to the selection of less-qualified women over more-qualified men." (*Id.*)

---

[1] The parties' briefs do not address disparate impact allegations, and the court expresses no view on whether the alleged promotion qualifications in fact have a disparate impact.

3

## II.     Discrimination Against Plaintiff

While enrolled in the MIT, Plaintiff claims she 'noticed that the majority of store managers and co-managers in her Region were male.' She alleges that the small number of women managers were "described as 'ball-busters'" (she does not say by whom) and that those women "did not exhibit any overtly feminine traits" (she does not explain how she made this assessment). (*Id.* ¶ 53.) One of the MIT trainers told Plaintiff that to succeed at Wal-Mart "she would need 'thick skin,' and that she could not be emotional or overly feminine." (*Id.* ¶ 54.) Hernandez alleges that she "noticed this was a common attitude" on the part of MIT trainers. (*Id.*) After completing the program, she was assigned to store 1955, where her manager was Maynard. (*Id.* ¶ 55.)

Plaintiff alleges that immediately after she began work at store 1955, Maynard began belittling her and "ma[de] it clear" to her that he would not support her aspirations to become a manager. (*Id.* ¶ 56.) Maynard treated her male co-workers differently, she alleges. (*Id.*) Maynard disciplined her for conduct for which her male counterparts were not disciplined, and three of her male co-workers were promoted to manager despite that conduct. (*Id.* ¶ 58.) She specifically notes an occasion when she "received coaching from Maynard when he noticed a Rollback sign near an item that was no longer on Rollback," but "a male Assistant Manager[] was only given a warning for this same issue." (*Id.* ¶ 59.) Plaintiff alleges that as a result of this disparate treatment by Maynard, she was discouraged from, and chose not to "overtly seek any further promotion opportunities" after she began working under Maynard's supervision (*Id.* ¶ 57.)

In 2010, Maynard directed that Plaintiff be transferred to store 5398. (*Id.* ¶ 60.) She was told (she does not say by whom) that she was on an "off-the-record" probationary period. (*Id.*) In 2011, she was terminated for "missing a check-off in the TLE department." (*Id.* ¶ 62.) The court is uncertain what this means, but it appears to be an infraction of some kind, and Plaintiff alleges that "others committed the same offense" without consequences. (Id.) Hernandez alleges that her female manager "had tears in her eyes when she fired Hernandez," and disclosed that she

4

did so because she "didn't have a choice and that the 'old boys network' was forcing her" to fire Plaintiff. (*Id.*)

## DISCUSSION

Defendant Wal-Mart moves to dismiss this case for failure to state a claim. Wal-Mart asserts that Plaintiff's allegations are insufficient to establish a claim of discrimination. (Mem. in Supp. of Mot. to Dismiss [23] at 1.) To survive this motion, Plaintiff's complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In arguing that Hernandez has not met this standard, Defendant notes that her own allegations show that (1) Plaintiff was promoted several times, and (2) Plaintiff did not formally apply for any position above that of Assistant Manager. (Mem. in Supp. of Mot. to Dismiss [23] at 4-5.) As explained here, the court concludes these factors do not require dismissal of the complaint.

Defendant notes, first, that Plaintiff herself has alleged that she was promoted twice during her time with Wal-Mart. (*Id.* at 4.) Thirteen months after starting as an associate, she was promoted to department manager. (*Id.*; Compl. [1] ¶ 50.) Approximately one year later, she was admitted to the MIT program. (Mem. in Supp. of Mot. to Dismiss [23] at 4; Compl. [1] ¶ 52.) To the extent Defendant believes these circumstances render a "failure to promote" claim implausible, the court disagrees. The fact that Plaintiff received promotions early on in her career does not defeat the inference that further progress ended for reasons related to sex. Plaintiff's allegations, read in the light most favorable to her, suggest that she believes her manager, Robert Maynard, displayed discriminatory animus. Maynard was not involved in Plaintiff's earlier promotions. And, of course, Wal-Mart's willingness to promote women to lower-level

5

management positions does not preclude the inference that it does not promote them to upper-level management positions. Plaintiff's history of promotions does not by itself defeat her claim.

Defendant also notes that Plaintiff did not formally apply for any position above that of Assistant Manager—a fact Defendant deems "fatal to her claim." (Mem. in Supp. of Mot. to Dismiss [23] at 4.) Defendant relies in part on *Hudson*, in which the Seventh Circuit affirmed summary judgment in favor of the employer where the plaintiff alleging discrimination "specifically decided not to apply for the position." (*Id.* at 4-5 (quoting *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004).) *Hudson* and other summary judgment cases on which Defendant relies assume a fully-developed record; they do not control the resolution of a motion to dismiss. In any event, as Plaintiff notes (Mem. in Opp'n to Mot. to Dismiss [36] at 5), a plaintiff's failure to establish that she applied for a particular promotion is not necessarily dispositive of her claim. A person who claims discrimination in promotion will be expected "to show that [s]he submitted a written application for a position . . . [but] that requirement may be relaxed where an employer ordinarily entertains applications for a certain type of job but a plaintiff is deterred from applying by the very discriminatory practices [s]he is alleging." *Loyd v. Phillips Bros.*, 25 F.3d 518, 523 (7th Cir. 1994).

Plaintiff argues that the standard should be relaxed in this case. She acknowledges that she did not apply for promotions but explains that "Maynard made her question her leadership skills and future at Wal-Mart. As a result, and because she knew she needed Maynard's endorsement to get promoted, [she] did not overtly seek any further promotion opportunities once she began working for Maynard." (Compl. ¶ 57.) She also suggests that Defendant's promotional policies—which favored candidates who are willing to commute long distances, relocate, and travel—had a disproportionate effect on women. (Compl. [1] ¶¶ 22.) She notes practices that could permit the bias of an individual supervisor to influence promotion decisions. (Id. ¶¶ 23, 25.) And she has alleged unfair disciplinary practices on the part of her own manager, Maynard. (*Id.* ¶¶ 56-62.) To prevail in this case, Plaintiff will need more substantial evidence than hearsay

6

accounts of system-wide bias against women. At this stage, however, her claim that she was deterred from applying for a promotion to manager because of her manager's practices meets the requirement of plausibility.

## **CONCLUSION**

For the foregoing reasons, the court concludes that Plaintiff has adequately stated a claim of discrimination under Title VII upon which relief can be granted. Accordingly, Defendant's motion to dismiss [23] is denied.

ENTER:

Date: July 20, 2020

_____
REBECCA R. PALLMEYER
United States District Judge